# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILVERTO HERRERA AND CLAUDIA HERRERA,<br><br>              Plaintiffs,<br><br>       v.<br><br>ALLIANCEONE RECEIVABLE MANAGEMENT, INC. d.b.a. ALLIANCEONE, INC. and DOES 1-50,<br><br>              Defendants. | Case No. 14cv1844 BTM(WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS; GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART  PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT** |

   Gilverto Herrera and Claudia Herrera ("Plaintiffs") brought an action against AllianceOne Receivable Management, Inc., ("Defendant"), arising out of Defendant's allegedly abusive debt collection practices. Defendant has collected $1,496 from Plaintiffs for court-imposed traffic fines, while knowing that the fines were mistakenly attributed to Plaintiff Gilverto Herrera.

   Plaintiffs' first Complaint was brought under the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), the Fair Debt Collection Practices Act ("FDCPA"), and several state tort causes of action. Plaintiffs now seek to amend the first Complaint by adding ten new federal and state causes of action.  Currently pending are: (1) Defendant's Motion for Partial Judgment on the Pleadings, Doc. 15, 15-1; (2) Defendant's Motion for Partial Summary Judgment, Doc. 19, and; (3) Plaintiffs' Motion for Leave to File an Amended Complaint, Doc. 23.

For the reasons below, Defendant's Motion for Partial Judgment on the Pleadings, Doc. 15, is GRANTED IN PART AND DENIED IN PART, Defendant's Motion for Partial Summary Judgment, Doc. 19, is GRANTED, and Plaintiffs' Motion for Leave to File an Amended Complaint, Doc. 23, is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

The following undisputed facts are stated in Plaintiffs' first Complaint ("Compl.") and the parties' motions. In late 2010/early 2011, Defendant was assigned to collect several unpaid traffic fines by the San Diego County Superior Court assessed against Gilberto G. Herrera. Doc. 19-2, ¶ 2. Defendant used "skiptracing" to locate Gilberto G. Herrera by searching his last name and an address associated with the fines. Id. at ¶ 3. The search produced four results associated with the address, and one was Plaintiff Gilverto Herrera. Id. at ¶ 4.

In January 2012, Plaintiffs received a Demand for Payment-Court Ordered Debt Collection ("Demand") notice from the Franchise Tax Board ("FTB"), seeking $1,496 to satisfy three outstanding orders for traffic fines. Compl. at ¶ 2. Plaintiffs learned that Defendant had submitted the Demand to the FTB as result of unpaid traffic fines, which the state court had issued to another person with a similar name but a different birth date. Id. at ¶ 3. In February 2012, Plaintiffs presented Defendant and the FTB with proof of their identities, and filed reports of potential identity theft with their creditors, banks, and the police department. Id. at ¶¶ 4-5. Plaintiffs allegedly contacted Defendant in person and by telephone in an effort to clear up the error. Id.

Plaintiffs' state income tax refund was then seized in March 2012 and $564.62 was sent to the FTB. Compl. at ¶¶ 2, 6. Plaintiffs made additional inquiries and learned through state court records that the fines were issued

to persons driving a vehicle owned by "Gilberto Gamino Herrera." Compl. at ¶ 7. Plaintiffs filed a state court lawsuit and obtained an order on May 31, 2012 ("May 2012 Court Order" or "Court Order") from the Superior Court declaring them not responsible for the traffic fine debt. Compl. at ¶ 8; Doc. 28-2, at 37. The Court Order stated: "these cases be removed from Petitioner's credit record, AllianceOne and Franchise Tax Board. Any monies garnished from Petitioner are to be refunded." Id. Plaintiff Gilverto Herrera then successfully cleared the citations from his driving record. Compl. at ¶ 9. Plaintiffs provided actual notice of the Court Order to Defendant on the day it was issued. Id. at ¶ 8.

Even after Defendant had notice of the May 2012 Court Order, Defendant continued contacting Plaintiffs regarding the unpaid debt. Compl. at ¶ 10. Defendant's collection efforts continued by telephone and mail throughout the spring of 2012. Id. Defendant even reported the unpaid fines to the credit reporting agencies. Id. This decreased Plaintiffs' credit score by about 200 points and jeopardized Gilverto Herrera's government job, which requires him to maintain an active security clearance. Id. Plaintiffs also continued receiving IRS and FTB garnishment notices. Id.

As a result of Defendant's collection efforts, Plaintiffs allegedly suffered harm including, but not limited to physical injury, mental stress, medical expenses, and a decreased credit rating which, inter alia, prevented Plaintiffs from refinancing their home. Compl. at ¶¶ 11-12. Mr. Herrera also received an adverse work evaluation because he had to miss work to clear up the identity mistake. Plaintiffs contacted Defendant in writing in November 2012, attaching records of their medical expenses and adversely impacted credit, but continued receiving unauthorized robo-calls demanding payment throughout 2013. Compl. at ¶¶ 13.

Plaintiffs filed the present action in Superior Court on November 5,

2013. Defendants removed the case to this Court on August 6, 2014 relying on federal question jurisdiction. Although this Order dismisses Plaintiffs' single pending federal claim, infra section II.3.b., Plaintiffs' pending motion to amend their Complaint with several new federal claims is partially granted. Therefore, the Court continues to have federal question jurisdiction.

## II.  DISCUSSION

### 1. Causes of Action

Plaintiffs' first Complaint raises seven causes of action against Defendant for violation of: (1) the Rosenthal Act, Cal. Civ. Code ("CCC") § 1788, et seq; (2) the FDCPA, 15 U.S.C. § 1692, et seq; (3) Conversion; (4) California Business and Professions Code ("CBPC") § 17200, et. seq; (5) Negligence; (6) Intentionally Annoying or Harassing over the Telephone, California Penal Code ("CPC") § 653(m), and; (7) Invasion of Privacy. Doc. 1. Plaintiffs' five state law causes of action are subject to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

In response to facts raised in Defendant's pending motion for partial summary judgment, Plaintiffs filed a motion for leave to amend the Complaint, seeking to add ten new causes of action for: (8) Negligent Violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq; (9) Willful/Intentional Violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq; (10) Deprivation of Constitutional and Statutory Rights, CCC § 52.1, and violation of the following; (11) California Credit Reporting Agencies Act, CCC § 1785.25(a); (12) Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b); (13) Rosenthal Act, CCC §1788.18(g), (14) Rosenthal Act, CCC § 1788.17; (15) FDCPA, 15 U.S.C. §1692(e)(8); (16) Deprivation of Liberty Without Due Process under the Fifth and Fourteenth Amendments to the United States and California

Constitutions, and 42 U.S.C. § 1983, and; (17) Deprivation of Rights Pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States and California Constitutions, and 42 U.S.C. § 1983. See Doc. 23-2.

### 2. Motion for Partial Judgment on the Pleadings

    a. Standard

The standard applied in considering a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is virtually identical to that applied in motions to dismiss under Fed. R. Civ. P. 12(b)(6), see Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055, n.4 (9th Cir. 2011), which provides a defense against complaints which "fail[] to state a claim upon which relief can be granted." A "Rule 12(b)(6) motion tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). As the Supreme Court has explained,

> a valid complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. . . . [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009); see also Petzschke v. Century Aluminum Co., 729 F.3d 1104, 1107 (9th Cir. 2013). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

### b. Analysis

On December 1, 2014, Defendant filed its motion for partial judgment on the pleadings on Plaintiffs' claims for conversion, negligence, invasion of privacy, and violations of CBPC § 17200 and CPC § 653m. Defendant argues that because its allegedly unlawful debt collection efforts involved post-judgment collection, they are immune from statutory and tort liability under California's litigation privilege, CCC § 47(b).[1] Doc. 15-1, at 4-7. The litigation privilege protects publications and communications: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation, and; (4) that have some connection or logical relation to the action. See Silberg v. Anderson, 50 Cal.3d 205, 212 (1990).

The purpose of the litigation privilege is to afford litigants and witnesses free access to the courts without fear of derivative tort liability. See Action Apartment Assn., Inc. v. City of Santa Monica, 41 Cal.4th 1232, 1242-43 (2007). Additionally, §47(b) is designed to:

> encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation. [internal citation omitted] To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice. [internal citation omitted] Moreover, [i]n furtherance of the public policy purposes it is designed to serve, the privilege prescribed by section 47(2) has been given broad application.

Rickley v. Goodfriend, 212 Cal. App. 4th 1136, 1162 (2013), reh'g denied (Feb. 5, 2013), review denied (Apr. 10, 2013) (quoting Rusheen v. Cohen, 37 Cal.4th 1048, 1063 (2006)).

---

[1] Under section 47(b), communications made in any legislative, judicial or other official proceedings authorized by law are absolutely privileged. See Cal. Civ. Code. § 47(b). "[S]ection 47(b) is not limited to statements made in a courtroom." Hagberg v. California Federal Bank FSB, 32 Cal.4th 350 (Cal. 2004).

The application of the litigation privilege to undisputed facts in a complaint is a question of law subject to the court's independent review. See Rothman v. Jackson, 49 Cal.App.4th 1134, 1139-1140 (1996). In debt collection cases the litigation privilege bars tort claims other than malicious prosecution. See People v. Persolve, LLC., 218 Cal.App.4th 1267, 1274, review denied (Nov. 13, 2013). In Komarova v. National Credit Acceptance, Inc., 175 Cal.App.4th 324, 337 (2009), a case of mistaken identity where the defendant-debt collector attempted to enforce a default arbitration award against a plaintiff who had not been a party to that arbitration, the court held that the litigation privilege did not apply to immunize defendant from plaintiff's Rosenthal Act claim, but the privilege barred the plaintiff's intentional infliction of emotional distress claim. Id. at 343.

Plaintiffs argue that the litigation privilege does not shield Defendant from liability for unlawful debt collection from the wrong person. But, Komarova found that the litigation privilege barred the plaintiff's tort claim, despite her not having been a party to the arbitration, because she was served with the petition to confirm the award and could have challenged it. 175 Cal.App.4th at 343. Though Komarova appears on-point, it is distinguishable on the facts from this case because the May 2012 Court Order gave Defendant actual notice that Plaintiffs were not the actual traffic fine debtors. Doc. 28-2, at 37. Additionally, unlike the plaintiff in Komarova, Plaintiffs here sought and obtained a legal remedy unambiguously clearing them of the debt.

The general rule is that "[t]he litigation privilege applies only to torts arising from communicative acts; it does not apply to purely noncommunicative tortious conduct." Brown v. Kennard, 94 Cal.App.4th 40, 45 (2001); Kimmel v. Goland, 51 Cal.3d 202, 211(1990). However, a court need not reach the "communicative" analysis when the challenged conduct

clearly does not further a litigation. See Silberg, 50 Cal.3d at 219-20. In this case, the Superior Court ordered Defendant to refund the monies garnished from Plaintiffs' tax refund and to remove the debt cases from their credit record. Notwithstanding the Court Order, Defendant persisted in its debt collection efforts against Plaintiffs with the knowledge that they were not the real debtors. As such, every collection action Defendant took against Plaintiffs for the traffic fine debt after May 31, 2012 was not privileged because it was in direct contravention of the May 2012 Court Order. See Goodfriend, 212 Cal.App.4th at 1148 (litigation privilege did not apply to attorneys' communications and actions because they did not achieve the object of the litigation). Knowingly pursuing collection action against an innocent party does nothing to further the litigation privilege's purpose. On the contrary, extending the privilege to such action encourages contemptuous conduct and subverts the legal system.

     If the allegations in the Complaint are true, then Defendant is not using the litigation privilege as a shied, but rather as a sword to injure innocent persons not parties to the litigation. Once given notice of the May 2012 Court Order, Defendant had no cause to pursue Plaintiffs and the action did not further the litigation against Gilberto G. Herrera in any way. The Court stresses that this exception from the privilege is narrow, applying only to conduct in contravention of a court order, and grounded in a similar exception to the privilege for actions for malicious prosecution. See Silberg, 50 Cal.3d at 215–216. The California Legislature has provided that persons

/ / /

/ / /

/ / /

/ / /

may be criminally prosecuted, CPC § 166, and civilly liable, Cal. C. Civ. P. § 1219, for contemptuous action. Accepting Defendant's argument would subvert these provisions and result in the privilege being used to shield all acts in furtherance of a litigation but in contempt of a court order. The litigation privilege was never designed to shield actions in contempt of court. Therefore, the Court finds that Defendant's actions are not given protection.

Based on the forgoing, each of Plaintiffs' tort claims and Defendant's underlying debt collection acts must be analyzed for privilege. First, the misconduct pled in support of Plaintiffs' third cause of action for conversion is the garnishment of their state income tax return, which is not privileged because Defendant has failed to return it in violation of the May 2012 Court Order. Compl. at ¶¶ 41-42. Therefore, the tort of conversion is not barred by the litigation privilege and the third cause of action survives.

The acts stated in support of Plaintiffs' fifth cause of action for negligence are Defendant's failure to: accurately determine the debtors' identity; state an accurate debt amount; cease harassment and phone calls after discovering the identity error; stop threatening Plaintiffs and otherwise harming their reputations, property and person; cease communicating by telephone and in person in a harassing, unreasonably frequent manner and with abusive, misleading language. Compl. at ¶ 55.  While some of these alleged acts of misconduct took place before Defendant gained definitive knowledge that Gilverto Herrera was not the traffic fine debtor through the May 2012 Court Order, and may be privileged, those acts occurring subsequent to the Court Order are not. Therefore, Plaintiffs' negligence action states facts sufficient to overcome Defendant's motion for partial judgment on the pleadings.

/ / /

Similarly, Plaintiffs' seventh cause of action for invasion of privacy is based on Defendant's alleged acts of publishing Plaintiff's information through different mediums, which includes reporting the debts to the credit reporting agencies. Compl. at ¶ 10, 55. Again, this allegedly occurred after the May 2012 Court Order was issued, and disregarded the portion of that order directing that "these cases be removed from Petitioner's credit record." Doc. 28-2, at 37. Additionally, reporting the debts was not meant to further the objects of the litigation, which is collection of the outstanding fines, because it lowered Plaintiffs' credit rating and jeopardized their employment. See Silberg, 50 Cal.3d at 212; Compl. at ¶ 11. Finally, communication to third party non-participants in the litigation is not protected by the privilege. See Goodfriend, 212 Cal.App.4th at 1163. Therefore, Defendant's action was not privileged and the motion is DENIED as to the seventh cause of action.

Plaintiffs' fourth cause of action seeking equitable relief under California's Unfair Competition Law ("UCL"), CBPC § 17200 et seq, also survives. The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]." Id. A cause of action under this section must be based on some predicate act involving a violation of some other statute. See Cel–Tech Communications v. L.A. Cellular Tel. Co., 20 Cal.4th 163 (1999). As stated above, none of Plaintiffs' tort claims are barred by the litigation privilege. Since Plaintiffs have a number of surviving predicate causes of action, they have stated a claim under § 17200.

The Court GRANTS Defendant's motion as to the sixth cause of action for violation of CPC § 653m. Section 653m(b) makes it a misdemeanor to make repeated phone calls with the intent to annoy or harass. "A statute creates a private right of action only if the enacting body

so intended." See Farmers Ins. Exch. v. Superior Court, 137 Cal.App.4th 842, 849 (2006). "That intent need not necessarily be expressed explicitly, but if not it must be strongly implied." Id at 850. Private rights of action under criminal statutes have rarely been implied, and when one has been read into a criminal statute "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979). The Court has reviewed section 653m and finds that the statute does not include language suggesting a private cause of action is available. See Aymar v. Stassinos, 2008 WL 4838232 (E.D. Cal. Oct. 7, 2008) (holding no private cause of action under section 653m). Additionally, Plaintiffs failed to cite authority showing that the state legislature intended to create a private right of action in CPC § 653m.

Therefore, Court GRANTS Defendant's motion in part, and the sixth cause of action is DISMISSED from Plaintiffs' first Complaint and may not be included in the proposed First Amended Complaint. The Court DENIES Defendant's motion as to causes of action 3, 4, 5, and 7.

### 3. Motion for Partial Summary Judgment

#### a. Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. See id. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party

failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. See id. at 322-23. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### b. Analysis

On December 31, 2014, Defendant filed a motion for partial summary judgment on Plaintiffs' first two causes of action, arising under the Rosenthal Act and the FDCPA (the "Acts"). Defendant argues that the Acts regulate only the collection of "debts," and that traffic fines do not arise out of a consensual transaction and don't constitute "debts" under the Acts. For the same reasons, Defendant opposes the addition of three new causes of action (13-15) arising under the Acts in Plaintiffs' proposed First Amended Complaint. The Court finds that Plaintiffs' claims under the Acts do not survive Defendant's motion.

The FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . ." 15 U.S.C. §1692a(5); see also Bloom v. I.C. Sys. Inc., 972 F.2d 1067, 1068-69 (9th Cir. 1992) (explaining that the FDCPA applies to debt incurred for personal rather than commercial reasons). The FDCPA defines consumer as "any natural person obligated ... to pay any debt." 15 U.S.C. § 1692a(3). While the FDCPA does not define transaction, the Ninth Circuit has stated that "the statute is limited in its reach 'to those obligations to pay arising from

consensual transactions, where parties negotiate or contract for consumer-related goods or services.'" Turner v. Cook, 362 F.3d 1219, 1227 (9th Cir. 2004) (quoting Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326 (7th Cir. 1997)). Similarly, the purpose of the Rosenthal Act is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts . . ." CCC § 1788.1(b). The Rosenthal Act defines consumer debt as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." CCC § 1788.2(f).

In this case, the undisputed character of the "debts" as unpaid traffic fines defeats the FDCPA and Rosenthal Act causes of action. Traffic fines do not result from consensual consumer transactions, and are therefore not "debts" within the meaning of the Acts. See Gulley v. Markoff & Krasny, 664 F.3d 1073, 1075 (7th Cir. 2011) (municipal fines not debts under FDCPA); Stubbs v. City of Ctr. Point, Ala., 988 F. Supp. 2d 1270, 1276 (N.D. Ala. 2013) (traffic ticket not a "debt" under the FDCPA because it's not the product of a consumer transaction); see also Turner, 362 F.3d at 1227 (FDCPA is limited to obligations arising from consensual transactions for consumer goods or services); Slenk v. Transworld Sys., Inc., 236 F.3d 1072, 1076 (9th Cir. 2001). Plaintiffs don't address the character fo the debt, but argue the purpose of the Acts is to protect mistakenly identified non-debtors who are subjected to harassing debt collection. Doc. 28, at 7 (citing Beck v. Maximus, 457 F.3d 291, 294 (3rd Cir. 2006); see also Wright v. Finance Services, 22 F.3d 647, 649 (6th Cir. 1993); Dutton v. Wolhar, 809 F. Supp. 1130, 1134 (D. Del. 1992)). Plaintiffs also rely on Davis v. Midland Funding,

41 F. Supp. 3d 919 (E.D. Cal. 2014), which held that the FDCPA encompasses claims brought by individuals subjected to collection efforts for obligations they are falsely alleged to owe.

Plaintiffs' reliance on Beck, Wright, and Dutton, is unpersuasive because those cases did not address whether the monetary obligations at issue fell within the FDCPA's definition of "debts." Similarly, Davis is distinguishable on its facts because the plaintiff-debtor could not prove the consumer character of the debt since he did not know the nature of its underlying transaction. 41 F. Supp. 3d at 922. By contrast, in this case, though Plaintiffs did not incur the debt at issue, by their own efforts they discovered that it is a non-consumer obligation for unpaid traffic fines.

Therefore, Defendant's motion is GRANTED and the first and second causes of action are DISMISSED. Additionally, Plaintiffs are DENIED leave to add causes of action numbers 13, 14, and 15, which also arise under the Acts.

**4. Motion for Leave to File Amended Complaint**
    a. Standard

Leave to amend a complaint should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile." Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999).

    b. Analysis

On February 20, 2015, Plaintiffs moved for leave to file a First Amended Complaint ("FAC") adding ten new causes of action to their

existing seven. Plaintiffs argue that leave to amend should be granted because their motion is timely, brought in good faith, does not prejudice Defendant, is not futile, and is their first request to amend the Complaint. Doc. 23-1, at 4, 5.

Defendant opposes the first seven causes of actions (FAC, Cause of Action ["COA"] 1-7) and the three new FDCPA and Rosenthal Act claims (FAC COA 13-15), arguing that amendment of these claims is futile for the reasons stated in Defendant's pending motions. Defendant also opposes the addition of the two new § 1983 causes of action (FAC COA 16, 17), arguing that they do not meet the pleading standard because Plaintiffs have failed to allege that Defendant is a state or government actor. See Grant v. United States Gov't, 2014 WL 6685035, *5 (E.D. Cal. Nov. 25, 2014); Williams v. Bank of Am., 2013 WL 1907529, *5 (E.D. Cal. May 7, 2013). Defendant does not appear to oppose the remaining new causes of action (FAC COA 8-12). Doc. 27, at 5, 9.

For the reasons stated above, the Court GRANTS Plaintiffs' motion for leave to file an amended complaint as to causes of action numbers 3, 4, 5, 7, since these claims are not dismissed. See supra section II.2.b. However, causes of action 1, 2, 6, 13, 14, 15 fail as a matter of law, see supra sections II.2.b and II.3.b, and leave to add them is DENIED because it would be futile. The Court also GRANTS leave to add new causes of action numbers 8-12, because Defendant has not opposed them.

Lastly, Plaintiffs' new § 1983 claims (COA 16-17) are not clearly futile, and leave to amend to add them is GRANTED. The Fifth and the Fourteenth Amendments protect individuals from the deprivation of liberty or property interests by state actors – not private persons. See Shelley v.

Kraemer, 334 U.S. 1, 13 (1948); see also Public Utilities Comm'n v. Pollak, 343 U.S. 451, 461 (1952). Similarly, to state a claim under section 1983, a plaintiff must demonstrate that the conduct complained of was committed by a person acting under the color of state law. See Rendell–Baker v. Kohn, 457 U.S. 830, 838 (1982). The ultimate issue in determining whether a person is subject to suit under § 1983 is whether the alleged infringement of federal rights is fairly attributable to the government. Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999).

In Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), the Supreme Court set forth a two-part test for determining whether a deprivation of a federal right could fairly be attributable to the state: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible"; and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor," and "[t]his may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Id. at 937.

Applying this test, Lugar held that a debtor-plaintiff who was subjected to a prejudgment attachment procedure under state law was deprived of his property through state action and therefore stated a valid § 1983 cause of action against a corporate creditor and its president, who were found to have acted under color of state law in participating in that deprivation. Id. at 941-42. In Jensen v. Lane County, 222 F.3d 570 (9th Cir. 2000), the Ninth Circuit also held state action existed where a private physician in Oregon operated under contract with the county in the detention and mental examination of persons brought in by police officers. Applying

the "close nexus/joint action test," the Court clarified that the "State [must be] so far insinuated into a position of interdependence with the [private party] that it was a joint participant in the enterprise." Id. Lastly, in Ballard v. Wall, 413 F.3d 510 (5th Cir. 2005), the Fifth Circuit found that even if a judge that handed out the underlying debt judgment is entitled to absolute immunity, state actors who act in concert with the court, such as a law firm representing a creditor, may still be held liable under § 1983 if they jointly engage with the state official in the challenged action. See 413 F.3d at 518 (citing Dennis v. Sparks, 449 U.S. 24, 27-28 (1980)).

Plaintiffs plead that Defendant acted under the color of state law when collecting court imposed fines from Plaintiffs as an agent pursuant to a contract with the Superior Court. Doc. 29, at 3. They also allege that Defendant has an office in the courthouse and wielded the authority of the state court to report the debt directly to the FTB. Doc. 29, at 3. Pursuant to Lugar, Plaintiffs have stated sufficient facts to suggest that their §1983 claims are at least plausible. See Iqbal, 556 U.S. at 677-78.

/ / /

/ / /

### III.  CONCLUSION

For the reasons discussed above: (1) Defendant's Motion for Partial Judgment on the Pleadings, Doc. 15, is **GRANTED IN PART** and **DENIED IN PART;** (2) Defendant's Motion for Partial Summary Judgment, Doc. 19, is **GRANTED**, and; (3) Plaintiffs' Motion for Leave to File an Amended Complaint, Doc. 23, is **GRANTED IN PART** and **DENIED IN PART**. Causes

of action numbers 1, 2, and 6 are DISMISSED from Plaintiffs' first Complaint as well as the identical claims proposed in the FAC, and causes of action numbers 13-15 may not be included in the FAC. Plaintiffs are granted leave to amend their first Complaint by adding causes of action 3, 4, 5, 7, 8-12, and 16-17 to the FAC.

**IT IS SO ORDERED.**

**DATED:  June 18, 2015**

**BARRY TED MOSKOWITZ, Chief Judge**

**United States District Court**