UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILVERTO HERRERA and CLAUDIA HERRERA,<br><br>Plaintiffs,<br><br>v.<br><br>ALLIANCEONE RECEIVABLE MANAGEMENT, INC., et al.,<br><br>Defendant. | Case No.: 14cv1844 BTM (WVG)<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S MOTION TO STRIKE** |

On July 24, 2015, Defendant AllianceOne Receivable Management, Inc., filed a motion for partial dismissal and a motion to strike portions of Plaintiffs Gilverto and Claudia Herrera's First Amended Complaint ("FAC"). For the reasons discussed below, the Court **DENIES IN PART** and **GRANTS IN PART** Defendant's motion for partial dismissal and **GRANTS** Defendant's motion to strike.

## I. FACTUAL BACKGROUND

The allegations in Plaintiffs' FAC, filed on June 23, 2015, stem from a "Demand for Payment-Court Ordered Debt Collection" issued by the Franchise

Case 3:14-cv-01844-BTM-WVG   Document 66   Filed 03/17/16   Page 2 of 11

Tax Board and received by Plaintiff Gilverto Herrera in January 2012. (FAC ¶ 5.)

Tax Board and received by Plaintiff Gilverto Herrera in January 2012. (FAC ¶ 5.) The demand was submitted to the Franchise Tax Board by AllianceOne, and referenced three cases in San Diego Superior Court against a "Gilberto G. Herrera" for unpaid traffic tickets. (FAC ¶¶ 5, 10.) Because Plaintiffs believed the demand was for a different individual, Plaintiffs faxed a letter in February 2012 to the Franchise Tax Board and AllianceOne and included a copy of Gilverto's driver license and social security card as identification. (FAC ¶ 7.) Plaintiffs also visited Defendant's office at the San Diego Superior Court, South County, multiple times in February and March 2012. (FAC ¶ 8.)

Plaintiffs' income tax refund was seized and sent to the Franchise Tax Board on March 21, 2012. (FAC ¶ 9.) Plaintiffs subsequently filed a petition in San Diego Superior Court for the return of the funds and to remove the case from Gilverto's credit record. (FAC ¶ 11.) The Plaintiffs received a judgment in their favor in May 2012 and Gilverto successfully removed the citations from his driving record soon thereafter. (FAC ¶¶ 11-12.)

Plaintiffs allege that despite the court order, Defendant continued contacting Plaintiffs on their residential telephone and by mail. (FAC ¶ 13.) Plaintiffs also allege that Gilverto's credit score was negatively impacted as a result of Defendant's actions. (FAC ¶ 13.) Specifically, Plaintiffs allege that they were denied credit on several occasions, had difficulty refinancing their home loan, and obtained loans at a higher interest rate because of Gilverto's low credit score. (FAC ¶ 13.) Plaintiffs also insist that they continued to receive notices from the Franchise Tax Board and IRS about non-payment of fines and potential garnishment of their property and future wages. (FAC ¶ 13.)

Gilverto works for the Department of Defense and maintains a security clearance, which allegedly requires that he maintain a good credit rating. (FAC ¶ 14.) Because of the adverse credit report, Plaintiffs allege that Gilverto received an adverse work evaluation and that his job was in jeopardy. (FAC ¶ 14.)

Plaintiffs' claims allege stress, anguish, and physical and mental harm caused by Defendant's conduct. (FAC ¶ 15.) Plaintiffs assert that Defendant called Plaintiffs at least once a month through on their landline, harassing Plaintiffs and demanding payment. (FAC ¶ 16.) Plaintiffs' FAC alleges the following causes of action: (1) conversion; (2) violations of California's Code of Business and Professions; (3) negligence; (4) invasion of privacy; (5-6) violations of the Telephone Consumer Protection Act ("TCPA"); (7) violation of California's Bane Act; (8) violations of California's Consumer Credit Reporting Agencies Act ("CCRAA"); (9) violations of the Fair Credit Reporting Act; and (10-11) constitutional violations.

## II. DISCUSSION

Defendant filed a motion for partial dismissal and a motion to strike portions of Plaintiffs' FAC on June 24, 2015. Specifically, Defendant moves to dismiss Plaintiffs' TPCA claims, CCRAA claims, Bane Act claims, and constitutional claims, and moves to strike the portions of the FAC that pertain to the Fair Debt Collection Practices Act and California's Rosenthal Act. Each argument is discussed in turn below.

A.   Motion to Dismiss

   *1.   Standard of Review*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, 565 U.S. 662, 679 (2009) (internal quotation marks omitted). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. Id.

### 2. *Telephone Consumer Protection Act ("TCPA") Claims*

Plaintiffs' fifth and sixth causes of action allege that Defendant violated the TCPA when Defendant used an automatic telephone dialing system with an artificial or prerecorded voice to call Plaintiffs on their home phone without their consent. (FAC ¶¶ 55-57, 69-72.) Defendant argues that debt collection calls to residential telephone lines are exempt from TCPA protection.

The TCPA generally prohibits "using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). However, calls are exempt from the TCPA if they are "initiated for emergency purposes, [are] made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or [are] exempted by rule or order by the Commission . . . ." Id. Pursuant to regulations promulgated by the Federal Communication Commission ("FCC"), calls not made for a commercial purpose, or calls made for a commercial purpose that do not "include or introduce an advertisement or constitute telemarketing" are also exempt from the TCPA. 47 C.F.R. § 64.1200(a)(3)(ii)-(iii).

The FCC has on occasion addressed the applicability of the TCPA's exemptions as they pertain to debt collection calls. In 1992, the FCC stated that,

"an express exemption . . . for debt collection calls is unnecessary because such calls are adequately covered by [existing] exemptions . . . ." Rules and Regulations Implementing the TCPA, 7 FCC Rcd. 8752, 8773 (Oct. 16, 1992) ("1992 Report and Order"). Specifically, debt collection calls "would be exempt from the prohibitions on such calls to residences as: (1) calls from a party with whom the consumer has an established business relationship, and (2) commercial calls which do not adversely affect privacy rights and which do not transmit an unsolicited advertisement." Id.

In 1995, the FCC again reiterated its decision that "prerecorded debt collection calls are adequately covered by exemptions adopted in our rules." Rules and Regulations Implementing the TCPA, 10 FCC Rcd. 12391, 12400 (Aug. 7, 1995) ("1995 Report and Order"). The FCC further clarified that "prerecorded debt collection calls are exempt from the prohibitions on prerecorded calls to residences as commercial calls which do not transmit unsolicited advertisement." Id. (citing 1992 Report and Order, 7 FCC Rcd. at 8773) (alterations omitted).

However, the FCC has not specifically addressed the applicability of the TCPA to debt collection calls with made to non-debtors. Given this ambiguity in the FCC's regulations, courts have struggled to determine how the FCC's explicit language—exempting "debt collection calls"—applies when the calls are erroneously made to non-debtors.

The court in Watson v. NCO Group, Inc., 462 F. Supp. 2d 641 (E.D. Pa. 2006), noted that a non-debtor has a greater right to privacy than someone who has fallen into debt. The court stated that the FCC exempted calls that "adversely affect the privacy rights intended to be protected by the TCPA." Id. at 645. Therefore, because the court held that a non-debtor's rights are violated when they are subjected to erroneous debt collection calls, the court found that the defendant's calls were not exempt from the TCPA. Id.

| | |
|---|---|
| 1 | However, in <u>Franasiak v. Palisades Collection, LLC</u>, 822 F. Supp. 2d 320 (W.D.N.Y. 2011), the court held that all debt collection calls are exempt under the FCC's regulations regardless of whether or not the intended recipient was in fact a debtor. The court noted that grouping calls to debtors and non-debtors together afforded the proper deference to the FCC's regulations. <u>Id.</u> at 325; <u>see also</u> <u>Santino v. NCO Fin. Sys., Inc.</u>, No. 09-CV-982-JTC, 2011 WL 754874 (W.D.N.Y. Feb. 24, 2011) (noting that the court in <u>Watson</u> failed to "accord appropriate judicial deference to agency rules"); <u>Meadows v. Franklin Collection Serv., Inc.</u>, No. 09-CV-605-LSC, 2010 WL 2605048 (N.D. Ala. June 25, 2010) (stating that the FCC has determined that all debt collection calls are excluded from the TCPA, including contacts to non-debtors) <u>aff'd in relevant part</u>, 414 Fed. App'x 230 (11th Cir. 2011). |

The Court agrees with the reasoning in <u>Franasiak</u>. The FCC explicitly stated that prerecorded debt collection calls are covered by the exemption that applies to commercial calls that do not transmit an unsolicited advertisement. <u>See</u> 1995 Report and Order, 10 FCC Rcd. At 12400. Until the FCC instructs otherwise, the Court follows the reasoning in <u>Franasiak</u>, and holds that the phrase "debt collection calls" in the FCC's regulations includes calls made to non-debtors.

Applied to the case at hand, Plaintiffs' TCPA claims should be dismissed. Although Plaintiffs allege that they are non-debtors, Defendant's calls were made for a commercial purpose and did not transmit an unsolicited advertisement. It is for the FCC, not the Court, to determine whether or not debt collection calls made to non-debtors are an exception to the general debt collection exemption. Therefore, Defendant's motion to dismiss Plaintiffs' fifth and sixth causes of action is **GRANTED**.

//
//

### 3. *Consumer Credit Reporting Agencies Act ("CCRAA") Claims*

Plaintiffs' eighth cause of action states that Defendant's conduct violated the CCRAA because the Defendant knew or should have known that the information supplied by Defendant to credit reporting agencies was based on an incorrect claim. (FAC ¶ 94.) In part, section 1785.25(a) of the CCRAA states that, "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know that information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a).

Here, Plaintiffs' allegations are sufficient to state a claim under the CCRAA. Plaintiffs allege that they attempted to notify Defendant to explain that the demand order references a difference person. Based on these allegations, Plaintiffs have a plausible claim that Defendant should have known the information regarding the debt was potentially inaccurate. See Duell v. First Nat'l Bank, No. 14cv2774-WQH-JLB, 2015 WL 4602008, at *10 (S.D. Cal. July 29, 2015). Therefore, Defendant's motion to dismiss Plaintiffs' CCRAA claims is **DENIED**.

### 4. *Bane Act Claims*

Plaintiffs' seventh cause of action alleges violations of California's Bane Act. The Bane Act provides a cause of action for any persons deprived of federal or state constitutional rights through "threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion." Cal. Civ. Code § 52.1(a). Although Bane Act claims were initially interpreted to apply only to hate crimes, "the California Supreme Court subsequently broadened [the Act's] application and held that 'plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion.'" Estate of Lopez v. City of San Diego, No. 13cv2240-GPC-MDD, 2014 WL 7330874, at *13 (S.D. Cal. Dec. 18, 2014) (quoting Venegas v. County of Los Angeles, 32 Cal. 4th 820, 842 (2004)).

Plaintiffs allege that the repeated phone calls made by the Defendant caused the Plaintiffs first to fear that they were the victim of identity theft, and then to fear that Gilverto could lose his security clearance because Defendant had negatively affected Plaintiffs' credit report. Furthermore, Plaintiffs allege that Defendant's actions coerced the Plaintiffs into taking time off from work to visit various police stations and government agencies to deal with the matter. Finally, Plaintiffs allege that Defendant's actions caused Plaintiffs to suffer physical and mental harm, stress, and anguish, requiring that the Plaintiffs pursue medical treatments.

First, speech alone cannot support a Bane Act claim unless the speech threatens violence against a person, and that person "reasonably fears that, because of the speech, violence will be committed against them or their property . . . ." Cal. Civ. Code § 52.1(j). Plaintiffs do not allege that the debt collection calls contained threatening language. Thus, because Defendant never threatened Plaintiffs with acts of violence, Plaintiffs' Bane Act claim must rely on coercion.

Second, a Bane Act claim that relies on a theory of coercion requires allegations of "such force, either physical or moral, as to constrain [the plaintiff] to do against his will something he would not otherwise have done." Meyers v. City of Fresno, No. 10-2359, 2011 WL 902115, at *7 (E.D. Cal. Mar. 15, 2011) (quoting Ex Parte Bell, 19 Cal. 2d 488, 526 (1942)).

Here, the FAC does not mention any threats of force, nor does it mention that Defendant applied force for the purpose of making Plaintiffs do something that they would not have done otherwise. Rather, Plaintiffs received phone calls seeking to collect on an allegedly mistaken debt. Without more, Plaintiffs' allegations do no support a claim that they were coerced into acting.

Because Plaintiffs have not stated an adequate claim under section 52.1 of the Bane Act, Defendant's motion to dismiss Plaintiffs' seventh cause of action is **GRANTED**.

### 5. *Constitutional Claims*

Finally, Defendant moves to dismiss Plaintiffs' tenth and eleventh causes of action, which state violations of the Equal Protection and Due Process Clauses of the United States Constitution, pursuant to 42 U.S.C. § 1983. In general, section 1983 claims require the showing of: "a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a 'person' acting under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiffs allege that Defendant "deprived Plaintiffs of liberty without due process of law" in violation of the Fifth and Fourteenth Amendment (FAC ¶ 111), and "deprived, harassed, intimidated, interfered, and violated plaintiffs' rights" in violation of the Equal Protection Clause of the Fourteenth Amendment (FAC ¶ 113).

(a) Due Process Claims

As an initial matter, Plaintiffs' cannot allege a due process claim in violation of the Fifth Amendment against a state actor. See Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001). Because Defendant was allegedly acting on behalf of the state court, Defendant's motion to dismiss Plaintiffs' Fifth Amendment Due Process claim is **GRANTED**.

A procedural due process claim under the Fourteenth Amendment has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). A substantive due process claim requires that "the plaintiff [] show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008).

Here, Plaintiffs have not alleged what specific liberty or property interest has been deprived by Defendant's actions. They merely claim that Defendant's acts deprived them of "property, life, liberty, livelihood, and employment." (FAC ¶

111.) Regardless of whether Defendant is considered a state actor, Plaintiffs failed to state a claim for a violation of the Fourteenth Amendment's Due Process clause because they did not identify a protected life, liberty or property interest that was wrongfully deprived by the Defendant's actions. Therefore, Defendant's motion to dismiss Plaintiffs' tenth cause of action is **GRANTED**.

### (b)   Equal Protection Claims

A section 1983 claim for a violation of the Equal Protection Clause of the Fourteenth Amendment requires that, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (citations and internal quotations omitted). Plaintiffs do not allege that they are part of a protected class, nor do they allege that Defendant's actions were motivated by an intent or purpose to discriminate. Plaintiffs only allege that Defendant "deprived, harassed, intimidated, interfered and violated plaintiffs' rights . . . ." (FAC ¶ 113.) Therefore, Defendant's motion to dismiss Plaintiffs' eleventh cause of action is **GRANTED**.

## B.   Motion to Strike

Defendant also moves to strike the portions of the FAC that pertain to the Fair Debt Collection Practices Act ("FDCPA") and California's Rosenthal Act. Plaintiffs did not address this argument in their opposition brief.

Rule 12(f) of the Federal Rules of Civil Procedure states that a district court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Generally, a motion to strike serves to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittleston, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (internal quotations and citations omitted).

//

In a June 18, 2015 order granting partial summary judgment, the Court dismissed Plaintiffs' FDCPA and Rosenthal Act claims. (See ECF No. 39, p.18.) Because the Court previously held that Plaintiffs' identical FDCPA and Rosenthal Act claims could not be included in the FAC, the Court **GRANTS** Defendant's motion to strike.

### III. CONCLUSION

For the reasons discussed above, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' fifth, sixth, seventh, tenth, and eleventh causes of action are **DISMISSED** without prejudice. Furthermore, the Court strikes the portion of Plaintiffs' FAC that pertains to the FDCPA and the Rosenthal Act.

Plaintiff has fifteen (15) days from the filing of this order to file an amended complaint.

**IT IS SO ORDERED.**

Dated:  March 17, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court